MAURICE A. ROY[1] vs. GEORGE W. GREENE, INC., & another.[2]

Norfolk.  October 3, 1988. — February 9, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Jurisdiction*, Specific performance. *Real Property*, Right of first refusal,
Option. *Waiver. Words*, "Right of first refusal."

The term "right of first refusal" with respect to real property was held to
   refer to a right that arises only after the owner of the property has
   received an acceptable bona fide, enforceable offer to buy from a third
   person. [69-70]
A tenant occupying commercial property who had a right of first refusal to
   purchase the premises if they were to be sold and who had, in reliance
   on that right, substantially improved the property during the course of
   the tenancy, was entitled to be presented by the owner with a third
   person's bona fide and enforceable offer to purchase, which the owner
   would otherwise accept, and to have a reasonable time to meet the offer
   before being deemed to have exercised or waived his right of first refusal.
   [70-71]

CIVIL ACTION commenced in the Superior Court Department
on October 26, 1984.

The case was heard by *B. Joseph Fitzsimmons, Jr.*, J.,
sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Mark G. Cerel* for the plaintiff.

*Richard D. Maciolek* (*Stephen J. Kenney* with him) for Kevin
J. Carlow.

O'CONNOR, J. Since 1971, the plaintiff has been a tenant
under an oral agreement and has operated an automobile repair
shop on premises owned by the defendant George W. Greene,

---

[1] Doing business as Central Auto Body.

[2] Kevin J. Carlow. George W. Greene, Inc., did not submit a brief but
instead rests on Kevin J. Carlow's brief.

Inc. (Greene). At the outset of the tenancy and on subsequent occasions, Greene's principals represented to the plaintiff that, if the property were to be sold, the plaintiff would have "a right of first refusal." In reliance on that repeated representation, the plaintiff substantially improved the property during the course of the tenancy. On several occasions during the tenancy, Greene offered to sell the premises to the plaintiff for $100,000, and the plaintiff counter-offered the sum of $75,000.

When Greene received an oral offer from the defendant Carlow in June, 1984, Greene again offered the premises to the plaintiff for $100,000 and again the plaintiff refused the offer and made a counter-offer of $75,000. Other than Greene's serving the plaintiff on September 28, 1984, with a notice to vacate the premises, the parties had no further communication prior to October 18, 1984, when Greene signed a purchase and sale agreement with Carlow. Shortly thereafter, the plaintiff commenced this action in which he seeks a court order requiring Greene to sell the premises to him on the same terms and conditions as provided in Greene's agreement with Carlow.

The case was tried before a judge of the Probate and Family Court sitting by designation in the Superior Court. The judge denied the requested relief, and the plaintiff appealed. The Appeals Court affirmed the judgment by an unpublished memorandum and order under its summary disposition rule 1:28. 25 Mass. App. Ct. 1109 (1988). We allowed the plaintiff's application for further appellate review. We now reverse the judgment entered in the Superior Court and remand to that court for the entry of a new order consistent with this opinion.

We accept the parties' framing of the issue presented for review. That issue is whether the trial judge erred in refusing to order that Greene specifically perform its agreement granting the plaintiff a "right of first refusal to purchase" the premises of which the plaintiff was a tenant. The parties agree that the plaintiff had a right of first refusal. The question is whether, by responding to Greene's offers to sell for $100,000 with $75,000 counter-offers, the plaintiff exercised that right. In answering that question, we make the assumption that the

agreement between Greene and Carlow provided for a purchase price of at least $100,000, that is, that the plaintiff had been given the opportunity to purchase the property for a price no less favorable to him than the price Greene ultimately accepted from Carlow. We must decide whether, in the absence of definition or explanation in the parties' agreement, the term "right of first refusal" has legal meaning and, if so, what that meaning is. Until now we have not directly addressed those questions.

The parties agree that the term "right of first refusal," in the absence of explanatory context or contractual definition, has legal meaning, but they disagree as to what that meaning is. The defendants assert that the holder of the right is entitled to nothing more than an opportunity to purchase the property on terms as favorable to him as the terms of any purchase and sale agreement previously or subsequently entered into by the owner and a third person. Here, the defendants say, the plaintiff was given that opportunity and rejected it, thereby exercising his right of refusal (waiving any right to purchase). If we were to accept the defendants' argument, of course, there would be no call for a specific performance order.

The plaintiff argues that, in the absence of contractual definition or explanation, the holder of a right of first refusal is entitled to be presented by the owner with a third person's bona fide offer to purchase, and then, having been informed about that offer, to elect whether to meet it. According to the plaintiff's construction of the terms in question, once a person with a right of first refusal is presented with a third person's offer, the right of first refusal ripens into an option to purchase in accordance with the terms of that offer. The plaintiff argues, however, that, until an existing offer has been made known to the holder of the right, the holder of the right realistically and fairly is not in a position to exercise it.

A right of first refusal necessarily implies a right to choose between purchasing and not purchasing the premises if the owner elects to sell them. An owner cannot truly elect to sell until he has an opportunity to do so, that is, until he has received a bona fide and enforceable offer to purchase. See

*Tamura* v. *DeIuliis*, 203 Or. 619, 626 (1955). Therefore, the right that a person with a right of first refusal has to choose either to purchase or not to purchase cannot be exercised before the owner has received a bona fide and enforceable (written) offer from a third party. Accordingly, courts from other jurisdictions that have considered the matter appear to have accepted the principle that, unless the context of the agreement dictates otherwise, the term "right of first refusal" and expressions of similar import refer to a right that arises only after the owner has received an enforceable offer to buy. See *Tamura* v. *DeIuliis*, *supra* at 625 ("[T]he fact that the lessee was to have the first option to buy indicates . . . the usual situation whereby if the owner receives an offer from a third party, the . . . person having the first option to buy . . . shall have a right to meet any such bona fide offer of the third party"); *King* v. *Dalton Motors, Inc.*, 260 Minn. 124, 127 (1961) ("Unless the context of the agreement indicates otherwise, the use of 'first option to buy' or a similar expression imports a preferential right on the part of the lessee to purchase the leased premises at the same price and upon the same terms as contained in any bona fide offer from a third person acceptable to the lessor"); *Brownies Creek Collieries, Inc.* v. *Asher Coal Mining Co.*, 417 S.W.2d 249, 252 (Ky. Ct. App. 1967); *Vandenbergh* v. *Davis*, 190 Cal. App. 2d 694, 697 (1961); *DiMaria* v. *Michaels*, 90 A.D. 2d 676, 677 (N.Y. App. Div. 1982). Contra *Dalton* v. *Balum*, 13 Wash. App. 160, 162-163 (1975). We, too, adopt that principle.

At no time did the plaintiff refuse to purchase the premises on the same terms as those of an outstanding enforceable offer made by a third person.[3] Therefore, the plaintiff neither exercised his right of first refusal nor waived his right to purchase. Our conclusion finds support not only in the cases cited above, but also in the case of *Cortese* v. *Connors*, 1 N.Y.2d 265 (1956). There, the Court of Appeals of New York addressed a situation in which a tenant held "the first option to purchase [the leasehold property] under the terms at which it is offered

---

[3] Whether the plaintiff was informed in June, 1984, of an outstanding oral offer by Carlow has not been established.

for sale." *Id.* at 267. The landlord listed the property with a broker who contacted the tenants and suggested a sale price. The tenants counter-offered a lower amount. The owner subsequently entered into a buy-sell agreement with a third party and the tenant sued for specific performance. The court rejected the argument that the tenants' counter-offer constituted a waiver or estoppel "since the condition precedent essential to a discharge of the landlord's obligation was not present, that is, rejection by the tenants of an offer that the landlord was willing to accept — pending which the landlord was in no position to sell to others. . . . [I]t is well settled that the landlord was in no position to call upon the tenants to exercise their option or lose it prior to receipt of a bona fide offer from a third person at a price she was willing to accept." *Id.* at 269. See *Jurgensen* v. *Morris*, 194 A.D. 92 (N.Y. App. Div. 1920); *Sargent* v. *Vought*, 194 A.D. 807 (N.Y. App. Div. 1920).

A right of first refusal provision is designed to afford the holder protection against a sale to others. That protection is only effective if, in the event the owner has elected to sell the property, the holder, who is usually a tenant and frequently, as here, has made substantial improvements, has a realistic opportunity to meet the offer the owner has elected to accept. Thus, we hold that a person in the position of the plaintiff who is a tenant and has improved the property may properly be deemed to have exercised his right of first refusal only when the owner has decided to accept a third person's outstanding and enforceable offer and the holder of the right has been informed of the details of that offer and has had a reasonable time to meet it. Such a construction of "right of first refusal" language in an agreement not demonstrating the parties' different intent serves the apparent objectives of the term without unfairly burdening the owner of the premises.

The defendants have not presented arguments based on the Statute of Frauds or on the lack of recording of the plaintiff's right of first refusal. We do not intimate whether such arguments would have been successful had they been made. On the one issue argued, we conclude that the judge should have ordered Greene to offer to sell the premises to the plaintiff on

the same terms and conditions provided in the purchase and
sale agreement between Greene and Carlow. Accordingly, we
reverse the judgment below and remand the case to the Superior
Court for the entry of an order consistent with this opinion.
In light of the passage of time since 1984, and in recognition
that specific performance is a remedy that is equitable in nature,
the order may reflect such equitable considerations as the judge
in the exercise of sound discretion may deem appropriate.

*So ordered.*