NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-679

J.K. SCANLAN COMPANY, LLC

vs.

EDWARD J. BARTLETT, JR., trustee,[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2016, the plaintiff, J.K. Scanlan Company, LLC, a general contractor (contractor), entered into a contract with the defendant, the Kargman Family Brookline Residence Trust (the trust), to undertake a major renovation project at Robert and Marjie Kargman's (the Kargmans) home in Brookline.[3]  The project did not go smoothly.  After eighteen months, the contractor left under contested circumstances.  When the trust refused to pay the contractor for a large outstanding invoice, the contractor

___

[1] Of the Kargman Family Brookline Residence Trust.

[2] Robert Kargman and Marjie Kargman.

[3] The Kargman home was held in trust.  Robert Kargman signed the contract on behalf of the trust.

brought the present action alleging breach of contract and related theories against the Kargmans and the trust. The trust filed several counterclaims, including for breach of contract and negligence.[4] After a trial, a jury found that the trust, but not the contractor, had breached the contract and that the contractor was negligent in its supervision of the project but the negligence did not cause the trust any damages. The jury awarded the contractor $1,791,568.93 in damages for the trust's breach of contract. On the trust's motions for judgment notwithstanding the verdict and for a new trial, the trial judge reduced the jury's damages award to $1,595,889 plus prejudgment interest but denied all other requests for relief. An amended judgment entered accordingly.

The trust appeals from the amended judgment. The trust challenges the jury instructions and claims that the verdicts were inconsistent. We conclude that these arguments are waived and affirm.[5]

---

[4] The parties stipulated to the dismissal of the Kargmans individually as defendants.

[5] The counts in the complaint and counterclaims that were not decided by the jury were dismissed either by stipulation or by the judge. The trust does not challenge the dismissal of any such counterclaims here. Nor does it challenge the judge's calculation of the interest on the amended judgment.

2

Background.  The jury could have found the following facts. On June 15, 2016, the parties executed a contract (the contract) pursuant to which the contractor was to "supervise and direct the Work, using the Contractor's best skill and attention" (supervision clause).  The contractor warranted the work would conform to the requirements of the contract documents and be free from defects, and agreed that "Work, materials, or equipment not conforming to these requirements may be considered defective."

As the project progressed, the relationship between the Kargmans and the contractor became strained.  From the contractor's perspective, the Kargmans were difficult clients because they frequently requested change orders and were verbally abusive.

The trust claimed that the source of the strain was the contractor's negligent supervision of the project.  For example, at one point in November 2017, the Kargmans returned home and discovered that there was no heat in the portion of the house where they were residing.[6]  Shortly thereafter, a sump pump that had been installed to drain water from the roof froze, causing

---

[6] The Kargmans chose to live in a portion of their home during the renovation project.

water to accumulate and pour through the temporary roof into the home, damaging the hardwood floor.[7]

In October 2017, Robert Kargman spoke to the contractor's principal, Mike Fish, about a path forward.  Ultimately, in mid-November 2017, the parties agreed that the contractor would amicably separate from the project.  The trust agreed to pay the contractor for the work completed to that point, and the contractor agreed to facilitate the transition of the project to a new contractor on December 1, 2017.  The contractor left the project site, as agreed, on December 1, 2017, and expected to be paid for its work.

Later that same day, December 1, 2017, the trust's attorney sent a letter to the contractor purporting to terminate the contractor for cause for materially breaching the contract and abandoning the project.  At that time, the trust still owed the contractor $1,062,093.47.

In February 2018, the contractor filed the present action to recover the amount due.  As noted, the trust filed counterclaims.  From May 9, 2023, to June 1, 2023, the parties tried their dueling claims to a jury.  On June 1, 2023, the jury returned a verdict, finding for the contractor on its claims for

---

[7] In both instances, the contractor immediately took responsibility and repaired the damage.

breach of contract, fraud, and promissory estoppel, and awarding damages. The jury rejected the trust's counterclaims for breach of contract, fraud, and violations of the Consumer Protection Act. The jury found for the trust on its counterclaims for negligence and violations of the Home Improvement Contractors Act, but, finding no causation, did not award the trust any damages.

More than two months later, on August 17 and 18, 2023, the trust filed motions for judgment notwithstanding the verdict and a new trial, raising for the first time the issues that form the basis of its appeal here. On October 16, 2023, the motion judge (who was also the trial judge) denied both motions in a comprehensive written memorandum of decision, and the amended judgment now before us then entered.

Discussion. The trust makes two interrelated arguments. First, the trust argues that the trial judge should have determined as a matter of law that the supervision clause related to "design and construction" of the project and should have then instructed the jury that the contractor could not recover on the contract without showing "complete and strict performance" of the supervision clause pursuant to the heightened standard of G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 730-731 (2018) (G4S). The trust argues that because the judge did not give that instruction, the

5

verdict must be vacated and the case must be remanded for a new trial.

Second, the trust asserts that the jury's verdict that the contractor was negligent is inconsistent with their verdict finding that the contractor was entitled to recover damages on its breach of contract claim. The trust reasons that because the jury found that the contractor had negligently supervised the construction, this finding necessarily was inconsistent with the jury's award of damages to the contractor for breach of contract because "a contractor cannot recover on the contract itself without showing complete and strict performance [quotation omitted]" of all contract provisions relating to "design and construction." G4S, 479 Mass. at 730-731.

For the reasons explained below, we conclude that both of these arguments are waived. We then address the trust's arguments that waiver should be excused.

1. The jury instructions. At no point before or during the trial did the trust ask the judge to determine as a matter of law that the supervision clause related to "design and construction" of the project and was thus subject to the heightened "complete and strict performance" standard of G4S. In fact, the trust received the instruction its counsel sought; did not object to the instructions given; and did not request the instruction it now presses in the first instance, despite

6

ample opportunity to do so.  Thus, the argument is waived.

Jarry v. Corsaro, 40 Mass. App. Ct. 601, 603 (1996) ("A party

must make a proper objection to a jury instruction before the

jury retires in order to preserve the issue for appeal").  See

Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

On the eleventh day of trial, the judge met with counsel to

discuss the proposed jury instructions and verdict slips.  The

trust's counsel requested a jury instruction on G4S's complete

and strict performance standard.  The trust's counsel made the

request in general terms, asking that the judge instruct the

jury about the contractor's "obligation of complete and strict

performance of all terms relating to the design and construction

work."  The judge took the request under advisement.

At the charge conference on May 30, 2023, the judge

discussed her draft jury instructions with all counsel.  The

draft jury instructions included an instruction, as the trust

requested, that "under our law [the contractor] must show

complete and strict performance of all of the contract's claims

that relate to construction."  The trust's counsel did not

object to the proposed instruction.  The judge subsequently

revised other jury instructions based on input from counsel and

emailed the revised draft to counsel that evening.

On May 31, 2023, the judge discussed the revised jury

instructions and verdict slip with counsel, and made additional

7

revisions based on comments raised by counsel that morning. Yet again, the trust's counsel did not object to the judge's proposed jury instruction on the G4S complete and strict performance standard.

The judge then charged the jury. Consistent with her initial draft G4S instruction, to which the trust did not object, the judge instructed the jury that "because [the plaintiff] is a contractor, under our law it must show complete and strict performance of all of the contract's claims that relate to construction." The judge then called all counsel to sidebar and invited any objections to her instructions. The trust's counsel did not object.

"As provided by the Massachusetts Rules of Civil Procedure, 'no party may assign as error the giving or failure to give an instruction unless [the party] objects thereto before the jury retire[] to consider [their] verdict, stating distinctly the matter to which [the party] objects and the grounds of [the] objection.'" Rotkiewicz v. Sadowsky, 431 Mass. 748, 750-751 (2000), quoting Mass. R. Civ. P. 51 (b). "The primary purpose of the rule is to put the judge on notice of the issue," and thus "[a] party objecting to the inclusion or exclusion of an instruction must . . . clearly bring the objection and the grounds for it to the attention of the judge." Rotkiewicz, supra at 751.

8

Here, the trust did not bring to the judge's attention the issue it now raises -- that whether the supervision clause relates to "design and construction" is a predicate legal determination that the judge should have made before the start of trial. Nor did the trust make a timely request for a G4S instruction relating to the supervision clause in particular, or even object to the jury instructions as drafted and delivered, despite ample opportunity to do so. The trust has thus waived its opportunity to challenge the jury instructions on appeal. See Greene v. Philip Morris USA Inc., 491 Mass. 866, 877-878 (2023) (defendant waived its challenge to jury instruction on causation where there was "no indication in the record that the judge was on notice of [the defendant's] objection"; "[i]f [the causation] instructions . . . were not enough to satisfy [the defendant], it needed to expressly say so"); Stone v. W.E. Aubuchon Co., 29 Mass. App. Ct. 523, 529 (1990) ("As the lessee did not object to the judge's instructions on this issue, it may not raise an objection in this court"); Grey v. Eastern Tank Lines, Inc., 7 Mass. App. Ct. 889, 889 (1979) (no error in denial of plaintiffs' motion for new trial where "[p]laintiffs' counsel did not request such an instruction, and there was no objection made to the charge as delivered").

2. The jury verdict. The trust's second argument on appeal is that the jury's verdict that the contractor was

9

negligent was inconsistent with their verdict that the contractor was entitled to recover damages for the trust's breach of the contract. Once again, because the trust did not raise this argument when the judge could have addressed it with the jury, but instead raised it long after the jury had been discharged, it is waived.

It is well established that when a party does not object to a perceived inconsistency in the jury verdict before the jury is discharged, that party "may not raise the issue as of right by way of a motion for new trial." Adams v. United States Steel Corp., 24 Mass. App. Ct. 102, 104 (1987) (affirming denial of new trial motion because trial counsel did not object to inconsistent verdicts prior to discharge of jury). See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 466 (2003) ("[A] party must request the judge to instruct the jury to reconsider their verdict . . . when there is time to correct any inconsistency. Failure to make such a timely request constitutes a waiver of any challenge to the verdict on the ground that it is inconsistent"); Uloth v. City Tank Corp., 376 Mass. 874, 884 (1978) (having failed to raise inconsistency in jury's verdict before jury was dismissed, defendants could not argue inconsistency on appeal).

> "Where, as here, a jury returns a special verdict, an objection that verdicts on several counts are inconsistent with each other must be taken at the time when the verdicts

10

are returned and before they are recorded, so that the trial judge has an opportunity to correct the error if there is one" (quotation and citation omitted).

Conway v. Planet Fitness Holdings, LLC, 101 Mass. App. Ct. 89, 101 (2022). Here, the trust did not contemporaneously object to the jury verdict. As noted, the trust raised this issue for the first time in motions for new trial and judgment notwithstanding the verdict. The trust's failure to raise a contemporaneous objection to the jury verdict is fatal to its claim at this point. See id.[8]

3. Grounds to excuse waiver. Notwithstanding that the trust failed to raise both of the above claims in a timely manner, the trust urges us to consider them on appeal because "the issues are (1) unresolved in the Commonwealth, (2) a matter

_____

[8] We disagree with the trust that a contemporaneous objection to the jury verdict would have been futile. As the judge concluded in denying the trust's posttrial motions, the jury's findings could have been harmonized in several ways, including that the jury could have found that the supervision clause did not involve construction and so did not trigger the "complete and strict performance" standard of G4S. See Adams, 24 Mass. App. Ct. at 104 (a trial judge can resolve inconsistency in a jury's verdicts by "find[ing] a view of the evidence which harmonizes the answers"). This harmonization is consistent with the trust's closing argument, which identified several ways in which the contractor allegedly failed to completely and strictly comply with contract terms related to construction, without mentioning the supervision clause. Alternatively, if the judge had found that the verdicts could have been inconsistent, she could have asked the jury to answer additional special verdict questions to address any such inconsistencies.

of public importance, (3) likely to arise again in later cases, and (4) fully briefed by the parties on appeal."  See, e.g., Guardianship of Kelvin, 94 Mass. App. Ct. 448, 452-453 (2018). We disagree.

We do not think that this case presents an appropriate opportunity to exercise our discretion to consider the waived issues.  First, we disagree with the trust that G4S marked a "sea change in construction law"; the Supreme Judicial Court was merely "interpret[ing]" its prior cases, "all" of which "concerned breaches of the actual design and construction of the project."  G4S, 479 Mass. at 731.  Second, the trust cites no case overturning a jury verdict on a waived ground, much less one where the jury's verdict, following a lengthy trial in which both sides were represented by counsel, appears reasonable based on the record evidence.  Compare Composto v. Massachusetts Bay Transp. Auth., 48 Mass. App. Ct. 477, 480 (2000) (judge's instructions to jury provided adequate and necessary guidance to

12

decide issues related to liability and did not create risk that jury's determinations were "distorted in any manner").

Amended judgment affirmed.

By the Court (Neyman, Shin & Wood, JJ.[9]),

Clerk

Entered:   June 5, 2025.

---

[9] The panelists are listed in order of seniority.